## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jennifer Wolff and Avery Wolff, | Case No.: _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| Columbia Debt Recovery, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.     This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., by Defendant and its collection agents in their illegal efforts to collect a consumer debt from each Plaintiff.

## JURISDICTION

3.    Jurisdiction of this Court arises under U.S.C. § 1692k(d),  and 28 U.S.C. § 1367 for pendent state law claims.

4.    Venue is proper because the acts and transactions occurred here, each Plaintiff resides in Minnesota, and Defendant transacts business here.

5.    Defendant and its collection employees have transacted business within the State of Minnesota by attempting to collect a debt from each Plaintiff via the telephone, the mails, and/or through the use of email while each Plaintiff was located within and permanently residing within the State of Minnesota.

6.    Defendant has transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

## PARTIES

7.    Plaintiff Jennifer Wolff is a natural person who resides in the City of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8.    Plaintiff Avery Wolff is a natural person who resides in the City of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

9.    Each Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's collective conduct and that is likely to be redressed by a favorable decision in this matter.

10.  Defendant Columbia Debt Recovery, LLC (hereinafter "Defendant") is foreign Washington state corporation and a Minnesota-licensed collection agency operating from a principal office address of 906 SE Everett Mall Way, Suite 301, Everett, WA 98208, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11.  Defendant's registered agent of process in Minnesota is Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

12.  Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

13.  Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14.  Defendant and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from each Plaintiff, as further described in this complaint.

## FACTUAL ALLEGATIONS

15.  Within one year immediately preceding the filing of this complaint, Defendant attempted to collect from each Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), by attempting to collect this debt from each Plaintiff in the State of Minnesota.

16.  Sometime on or before September 2023, each Plaintiff incurred an alleged debt to The Marshall Apartments, Minneapolis, Minnesota ("debt") which was

approximately $1,435.00 and used for the Plaintiffs' personal, family, and/or household purposes.

17.   Each Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

18.   Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendant for collection from each Plaintiff.

### *Defendants' Illegal Collection Efforts*

19.   Sometime on or around August 31, 2023, Defendant sent Plaintiff Jennifer Wolff a collection letter by email for this alleged debt which was a "communication" in an effort to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

### *First Dispute of Debt in Writing from Plaintiffs to Defendant*

20.   On September 30, 2023, Plaintiffs sent a written dispute of this debt and refused to pay it to Defendant.

21.   Plaintiff Jennifer Wolff sent the bottom portion of the original August 31, 2023, collection letter that she had received from Defendant and indicated that she had disputed this debt in writing.

22.   At that point, Defendant had received a dispute in writing and therefore its Defendant was legally obligated to cease further collection efforts on this disputed debt pursuant to the FDCPA.  15 U.S.C. § 1692c(c).

23.    Despite this fact, Defendant later acknowledged having received this dispute and
continued to contact Plaintiffs in an effort to collect this debt in violation of the
cease and desist provisions of the FDCPA.

### *Harassing Phone Calls to Plaintiff Avery Wolff*

24.    Defendant made repeated harassing phone calls to Plaintiff Avery Wolff demanding
payment on this debt despite the fact that her mother and co-obligor, had disputed
this debt in writing to Defendant.

25.    These phone calls were very distressing to Plaintiff Avery Wolff since she and her
mother had promptly and properly disputed this debt in writing to Defendant.

### *Second Dispute of Debt in Writing from Plaintiffs to Defendant*

26.    On November 3, 2023, Defendant sent Plaintiff Jennifer Wolff a collection letter
along with documentation regarding this alleged debt and again demanded that she
pay it.

27.    On November 28, 2023, Plaintiffs again disputed this debt in writing to Defendant
by providing extensive proof that there was no obligation remaining on this
apartment lease and again vociferously disputing this account in writing.

28.    Despite this second written dispute, Defendant continued to attempt to collect this
alleged debt from Plaintiff both in writing and by telephone.

### *Third Dispute of Debt in Writing from Plaintiffs to Defendant*

29.    On January 15, 2024, Defendant again attempted to collect this debt from Plaintiff
when it sent a copy of a lease, a statement of account, and a ledger from the

apartment complex to justify continuing to collect this debt and in violation of the FDCPA's cease and desist provisions.

30. On February 7, 2024, Plaintiffs again disputed this debt in writing.

### *More Collection Harassment Despite Written Disputes*

31. On February 15, 2024, Defendant again ignored Plaintiffs' written disputes and continued to attempt to collect this debt, to credit report it, and to illegally add interest to it even though it was a disputed debt.

32. Despite Defendant having received these multiple written disputes and refusal to pay this alleged debt from Plaintiffs, Defendant again sent both Plaintiffs more demands for payment of it and ignored their disputes in violation of the FDCPA. 15 U.S.C. § 1692c(c).

33. Plaintiffs' receipt of more collection letters and multiple phone calls from Defendant, despite repeatedly disputing this debt and providing documentation of that dispute, was extremely frustrating and upsetting for Plaintiffs.

34. Defendant failed to undertake any reasonable investigation into the basis of this alleged debt with this apartment complex because it immediately ignored Plaintiffs' refusal to pay and instead continued its collection efforts in violation of numerous provisions of the FDCPA.

### *Defendant's False and Deceptive Threat of Pre-Judgment Interest*

35. Defendant's collection letters to Plaintiffs falsely state that this alleged debt bears interest at 6.00% per annum.

36.    Defendant's demand for interest is a false and deceptive collection practice because this alleged debt is (a) not owed by Plaintiffs at all; and, (b) is a disputed amount, and therefore unliquidated debt, for which pre-judgment interest is not available under Minnesota Law.

37.    The demand for 6.00% interest on this disputed debt is a further false and deceptive collection practice against Plaintiff by this Defendant in violation of the FDCPA.

38.    The FDCPA prohibits to addition of any amount over and above the principal amount of the debt unless that additional amount is permitted by the contract underlying the debt or otherwise permitted by law.

39.    Plaintiffs never agreed to pay interest in any amount on this alleged debt because they did not agree that they even owed the alleged debt for the apartment rental and disputed it.  See *Tate v. Ballard,* 243 Minn. 353, 360, 68 N.W.2d 261, 266 (1954) ("Liability for interest is purely contractual, and a person is not chargeable therewith unless he has agreed to its imposition. County of Redwood v. Winona & St. Peter Land Co., 40 Minn. 512, 41 N.W. 465, 42 N.W. 473.")

40.    There was no agreement between Plaintiffs and Defendant underlying this debt which permitted these threatened 6.00% interest collection fees by Defendant and these fees are not otherwise permitted by law.

41.    It was a false and deceptive debt collection practice for Defendant to misrepresent the amount due and owing by Plaintiff for this debt or that it would accrue interest if unpaid, especially since no such interest was ever awarded by the Minnesota state court.

*Use of Unauthorized Collection Agency Name in Letters*

42.     Defendant is operating under the D/B/A name "Genesis" according to the collection

        letters it sent to Plaintiffs on or about August 31, 2023, and thereafter.

43.     The name "Genesis" is not registered with the Minnesota Department of Commerce

        as required by law and is not registered as an assumed business name with the

        Minnesota Secretary of State as required by Minnesota law.

44.     There are over 160 entities whose name begins with "Genesis" registered in the

        State of Minnesota.

45.     After a lengthy and diligent search, an investigation revealed that only one of them

        is associated with Defendant, namely, "Genesis Credit."

46.     Defendant has registered the name "Genesis Credit" with the Minnesota Department

        of Credit and Minnesota Secretary of State but is not authorized to operate under

        the assumed name "Genesis."

47.     It was a materially false and deceptive collection practice for Defendant to claim

        that it was lawfully operating as a collection agency in Minnesota in its collection

        letters to Plaintiff under the name "Genesis" when it was not so authorized.

48.     The misuse by Defendant of the name "Genesis" is a collection practice likely to

        confuse and frustrate the least sophisticated consumer in their efforts to hold this

        Defendant accountable for its collection conduct in violation of the FDCPA.

49.     The FDCPA specifically prohibits debt collectors from operating in any name other

        than their true name and Defendant's conduct as alleged herein therefore violates

        15 U.S.C. § 1692e(14).

### *Defendant's Violations of the Regulation F "Debt Parking" Prohibitions*

50. Under its rulemaking authority, the Consumer Financial Protection Bureau issued Regulation F, effective November 30, 2021, which further constrains Defendant's lawful debt collection conduct and further expands Plaintiff's rights under the FDCPA ("Reg. F"). 12 C.F.R. § 1006, *et seq.*

> (a) Authority. This part, known as Regulation F, is issued by the Bureau of Consumer Financial Protection pursuant to sections 814(d) and 817 of the Fair Debt Collection Practices Act (FDCPA or Act), 15 U.S.C. 1692*l*(d), 1692*o*; title X of the Dodd–Frank Wall Street Reform and Consumer Protection Act (Dodd–Frank Act), 12 U.S.C. 5481 et seq.; and paragraph (b)(1) of section 104 of the Electronic Signatures in Global and National Commerce Act (E–SIGN Act), 15 U.S.C. 7004.

> (b) Purpose. **This part carries out the purposes of the FDCPA, which include eliminating abusive debt collection practices by debt collectors, ensuring that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and promoting consistent State action to protect consumers against debt collection abuses. This part also prescribes requirements to ensure that certain features of debt collection are disclosed fully, accurately, and effectively to consumers in a manner that permits consumers to understand the costs, benefits, and risks associated with debt collection, in light of the facts and circumstances.** Finally, this part imposes record retention requirements to enable the Bureau to administer and carry out the purposes of the FDCPA, the Dodd–Frank Act, and this part, as well as to prevent evasions thereof. The record retention requirements also will facilitate supervision of debt collectors and the assessment and detection of risks to consumers.

12 C.F.R. § 1006.1 (emphasis added).

51. A violation of Reg. F with respect to a consumer is a violation of the FDCPA.

52.    Section 12 C.F.R. 1006.30(a)(1) of Reg. F prohibits a debt collector from furnishing information to a consumer reporting agency about a debt before taking specific actions to contact the consumer about that debt.

53.    A debt collector can satisfy this requirement by: (i) speaking to the consumer about the debt in person or by telephone; or (ii) placing a letter in the mail or sending an electronic message to the consumer about the debt and waiting a reasonable period of time to receive a notice of undeliverability, provided certain other conditions are satisfied.  A validation notice is one type of letter or electronic communication debt collectors can use to satisfy § 1006.30(a)(1)(ii).

54.    Defendant violated Reg. F when it credit reported this disputed account on Plaintiff's all three of her consumer credit reports before ever communicating with Plaintiff. 12 C.F.R. 1006.30(a)(1).

55.    Defendant did not speak with either Plaintiff, send either Plaintiff a letter, or send either Plaintiff an electronic message before furnishing this information about this disputed account to Experian, Trans Union and/or Equifax.

56.    The failure to communicate first with a consumer before furnishing adverse credit information is an unfair debt collection practice in violation of the FDCPA. 12 C.F.R. 1006.30(a)(1); 15 U.S.C. § 1692e(8).

57.    The above-described communications and conduct from Defendant to each Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

*Summary*

58.    Each of these collection communications from Defendant and its employees were "communications" in an effort to collect a debt as that term is defined by 15 U.S.C. §1692a(2).

59.    This collection communication described above violated the FDCPA because Defendant's collectors engaged in harassing, oppressive, and abusive tactics to pressure each Plaintiff into paying a debt.

60.    The above-described communications and conduct from Defendant toward each Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(c), 1692d, 1692e, 1692e(2), 1692e(5), 1692e(8), 1692e(9), 1692e(10), 1692e(14), 1692f, and 1692f(1), and the FDCPA's enabling regulation, Reg. F, amongst others, as well as violations of Minnesota law.

*Each Plaintiff Has Suffered Concrete Harm*

61.    The above-described collection conduct by Defendant and its collection employees in their efforts to collect this alleged debt from each Plaintiff were oppressive, deceptive, misleading, unfair, and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

62.    These collection actions taken by Defendant, and the collection employees employed by it, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

63.    These violations by Defendant were knowing, willful, negligent and/or intentional, and it did not maintain procedures reasonably adapted to avoid any such violations.

64.    Defendant's collection efforts with respect to this alleged debt from each Plaintiff caused them to suffer concrete and particularized harm because the FDCPA provides each Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

65.    Defendant's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated each Plaintiff's ability to intelligently respond to Defendant's collection efforts because the Plaintiffs could not adequately respond to the Defendant's demand for payment of this debt, and they invaded each Plaintiff's peace and right to privacy in their financial affairs.

66.    A violation of Reg. F with respect to a consumer is an unfair consumer debt collection practice and a violation of the FDCPA.

### *Each Plaintiff Has Article III Standing*

67.    Each Plaintiff has Article III standing by way of suffering from the following concrete harms that came as a direct and proximate result of the Defendant's conduct, errors, omissions, and violations of federal consumer protection laws as more detailed herein, specifically:

**HARMS: EMOTIONAL**

- Emotional distress

- Harassment

- Oppression

- Annoyance

- Abuse

- Upset

- Fear

- Frustration

- Repeated phone calls

- Familial distress

- Invasion of Privacy: Intrusion upon seclusion

**HARMS: ECONOMIC**

- Misstatement of Amount of Debt

- Spending time, energy, money to learn the truth

- Lost work time

**HARMS: LEGAL**

- Attorney's fees

- Filing fees

- Injunctive relief needed

- Declaratory relief needed

- Incorrect interest charges

**HARMS: REPUTATIONAL**

- Defamation

- Credit report damage from inaccurate reports

- Improper inquiries on credit reports

**HARMS: FUTURE RISKS**

- A risk of future harm can independently create concrete injury.

- Each Plaintiff is exposed to the future risk of credit denials to Plaintiff otherwise good credit as a result of this undisputed entry on a credit report

- Each Plaintiff's knowledge exposure to a risk of future monetary or reputational harm by this Defendant has caused current emotional or psychological harm

- Emotional distress damages are available to consumers for violations of federal statutes and emotional distress damages are concrete injuries. *Carey v. Piphus*, 435 U.S. 247 (1978)

- Time and money wasted by each Plaintiff in order to prevent further possible harm is a concrete injury

- Each Plaintiff will be deterred from applying for credit or applying for employment or housing because of Defendant's conduct

*Respondeat Superior Liability*

68.    The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with each Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal,

-14-

Defendant.

69.    The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

70.    By committing these acts and omissions against each Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

71.    Defendant is therefore liable to each Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from that Plaintiff.

## **TRIAL BY JURY**

72.    Each Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## **CAUSES OF ACTION**

### **COUNT I.**

### **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

### **15 U.S.C. § 1692 *et seq.***

73.    Each Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

74.    The foregoing acts and omissions of Defendant and the others and their agents constitute numerous and multiple violations of the FDCPA including, but not

limited to, each and every one of the above-cited provisions of the FDCPA, 15

U.S.C. § 1692 *et seq.*, with respect to each Plaintiff.

75.    As a result of each Defendant violations of the FDCPA, each Plaintiff is entitled to

actual damages and statutory damages in an amount up to $1,000.00 pursuant to 15

U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15

U.S.C. § 1692k(a)(3), from Defendant herein.

**COUNT II.**

**DECLARATORY AND INJUNCTIVE RELIEF**

76.    Each Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

77.    An actual controversy has arisen and now exists between Plaintiffs and Defendant

concerning their respective rights and duties in that Plaintiff contends that there no

legal obligation to pay this alleged existed, whereas Defendant disputes this

contention and by its conduct contends that such an obligation does exist.

78.    Plaintiff desires a judicial determination of Defendant's rights and duties, and a

declaration as to the existence or non-existence of the alleged debt, and if it so exists,

the extent of the liability of Plaintiffs to Defendant, if any.

79.    A judicial declaration is necessary and appropriate at this time under the

circumstances in order that each Plaintiff may ascertain that Plaintiff's rights and

duties because each Plaintiff's personal business affairs are seriously impaired, and

Plaintiffs are otherwise suffering a financial burden by this unsettled state of affairs.

80.    Plaintiff has already suffered from damage by having been subjected to collection efforts on this alleged debt and by Defendant's threats to attempts to collect it from Plaintiffs.

81.    Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent Defendant from causing further unwarranted and unjust damage to Plaintiffs.

82.    Injunctive relief is also appropriate to order Defendant to respect the Minnesota state court judgment obtained by Plaintiff, and to order that Defendant cease and desist any further collection efforts on this alleged debt and give full faith and credit to that underlying judgment, pursuant to 28 U.S.C. § 2283 (permitting a federal court to enter injunction in order to protect or effectuate a state court judgment).

## COUNT III.

## FRAUD

83.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

84.    The Minnesota Court of Appeals has held that:

> A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying. Restatement of Contracts (Second) § 164(1) (1981).

> A misrepresentation is fraudulent if it is intended to induce a contract and either is known to be false or made without knowledge of whether it is true or false. *Id.* at § 162(1). …

> A misrepresentation is material if it would be likely to induce a reasonable person to manifest his or her assent or the maker knows

-17-

that for some special reason it is likely to induce the particular recipient to manifest such assent. *Id.* at § 162(2); *see also Pasko v. Trela,* 153 Neb. 759, 763, 46 N.W.2d 139, 143 (1951).

Carpenter v. Vreeman, 409 N.W.2d 258, 260–61 (Minn. Ct. App. 1987).

85.     During the collection communications between August 31, 2023, and the present, Defendant repeatedly and falsely represented to Plaintiffs that they were obligated to pay interest on this alleged debt when, in material fact, they were not.

86.     Plaintiffs had no legal obligation whatsoever to pay any amount of interest on this alleged debt to Defendant because it was a disputed debt and therefore illiquid and nut subject to prejudgment interest.

87.     Defendant's use of an unlicensed collection agency name was a false and deceptive practice in violation of state and federal law.

88.     Defendant attempted to fraudulently induce Plaintiffs to pay this debt by deliberate misrepresentation of these material facts, as well as omission of other material facts which it had a duty to disclose to Plaintiffs, including the fact that Defendant was legally obligated to cease further collection communications with Plaintiffs after they had disputed this debt in writing.

89.     Defendant's misrepresentations that Plaintiffs owed this alleged debt and interest on it were material misrepresentations of fact because they influenced Plaintiffs' judgment and decisions regarding entering into the agreement to repay it.

90.     Defendant knew that its misrepresentations to Plaintiffs were false at the time they made them.

91.    Defendant's misrepresentations were made intending that Plaintiffs would rely on them and Plaintiffs did rely upon them.

92.    Plaintiffs reasonably relied and acted upon Defendant's misrepresentations.

93.    Each Plaintiff was proximately harmed as a direct result of relying on Defendant's false representations and has suffered actual damages made in reliance thereon, as well as other damages, in an amount to be proven at a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, each Plaintiff prays that judgment be entered against Defendant as follows:

- for an award actual damages and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for each Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for each Plaintiff;

- for a declaratory judgment holding that neither Plaintiff owes nothing on this alleged debt;

- for actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant to Plaintiffs regarding this alleged debt;

- for an injunction against Defendant and others preventing them from further attempts to collect this alleged debt from Plaintiffs;

- for all other recoveries and fees otherwise permitted by these claims and by law;

- for attorney's fees and costs of suit as provided by state and federal law;

- for both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 10, 2024                          **THE BARRY LAW OFFICE, LTD**

By: s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
1422 Asbury Street
St. Paul, MN 55108-2434
Telephone: (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

The undersigned verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, best recollection and belief formed after reasonable inquiry.

3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

6. Each exhibit I have provided to my attorneys that has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated any attached exhibits, except that some of those exhibits may contain some of my own handwritten notations.

***I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.***

Date ___May 13, 2024_____    Signature _*Avery Wolff*_____
                                             Avery Wolff (May 13, 2024 20:31 CDT)

Printed Name: **<u>Avery Wolff</u>**

-22-

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

The undersigned verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, best recollection and belief formed after reasonable inquiry.

3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

6. Each exhibit I have provided to my attorneys that has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorney where appropriate, I have not altered, changed, modified, or fabricated any attached exhibits, except that some of those exhibits may contain some of my own handwritten notations.

***I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.***

Date ___May 10, 2024___     Signature _____
                                      Jennifer Wolff (May 10, 2024 19:59 CDT)

Printed Name: **<u>Jennifer Wolff</u>**

-21-

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**. The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary. Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible. For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand. Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.** This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.** If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court. I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.** If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention. Thank you for your anticipated cooperation in this vital matter.